**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JIM HOOD, ATTORNEY GENERAL OF THE STATE**          **PLAINTIFF**
**OF MISSISSIPPI,** *ex rel.* **THE STATE OF MISSISSIPPI**

**V.**          **CIVIL ACTION NO. 1:10CV104-SA-JAD**

**ASTRAZENECA PHARMACEUTICALS, LP, et al.**          **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is the State of Mississippi's Motion to Remand [8]. After reviewing the motion, response, rules, and authorities, the Court finds as follows:

## I. BACKGROUND

On March 12, 2010, the State of Mississippi filed the instant action against AstraZeneca Pharmaceuticals, L.P., AstraZeneca, L.P., AstraZeneca P.L.C., AstraZeneca, A.B., and AstraZeneca U.K. Limited, in the Circuit Court of Chickasaw County, Mississippi. The Complaint states the following claims: knowingly making or causing to be made false statements of material fact for use in determining rights to a Medicaid benefit in violation of the State's Medicaid law under Miss. Code Ann. § 43-13-101, *et seq.* (1972 as amended); violation of the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.* (Rev. 2005); fraud and misrepresentation; unjust enrichment; negligence and gross negligence; and injunctive relief.

On April 26, 2010, Defendants removed this action pursuant to 28 U.S.C. §§ 1332, 1331, 1441, and 1446, alleging diversity jurisdiction and that the Complaint raises substantial issues of federal law. The State filed its Motion to Remand on April 28, 2010.

## II. ANALYSIS AND DISCUSSION

***Removal and Remand Standard***

 Federal courts are courts of limited jurisdiction. <u>Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1</u>, 665 F.2d 594, 595 (5th Cir. 1982). The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the districts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This Court also has original jurisdiction when "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a); <u>Addo v. Globe Life and Accident Ins. Co.</u>, 230 F.3d 759, 761 (5th Cir. 2000).

 Once a motion to remand is filed, the burden falls on the party seeking to maintain this Court's removal jurisdiction to show that the requirements for removal have been met. <u>De Aguilar v. Boeing Co.</u>, 47 F.3d 1404, 1408 (5th Cir. 1995). After removal of a case, the plaintiff may move for remand, and "[i]f it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." <u>Eastus v. Blue Bell Creameries, L.P.</u>, 97 F.3d 100, 106 (5th Cir. 1996); <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L .Ed. 1214 (1941).

In this case, Defendant asserts that federal jurisdiction exists because: (1) there is complete diversity and the amount in controversy exceeds the jurisdictional requisite, and (2) that Plaintiff's Complaint raises substantial issues of federal law.

***Diversity Jurisdiction***

Plaintiff asserts that remand is warranted because there is no complete diversity between the parties. Although the parties appear to agree that the amount in controversy exceeds the jurisdictional minimum imposed by 28 U.S.C. § 1332, Plaintiff contends that complete diversity is destroyed because the Plaintiff is the State of Mississippi, which is not a citizen for purposes of establishing diversity. Consequently, Plaintiff argues that removal is improper, notwithstanding the fact that it is undisputed that Defendants are not citizens of Mississippi.

Defendants oppose remand on the ground that, despite the fact that the caption of the Complaint names the "State of Mississippi" as the only Plaintiff, the Complaint also asserts claims on behalf of the Schools Employees Life and Health Plan ("Employees Plan"). Defendants assert that complete diversity is satisfied because the Employees Plan is a Mississippi citizen, a real party in interest,[1] and a separate and distinct entity from the State.

Since there is no dispute that the amount in controversy is met in this case, the Court will focus its analysis on determining whether this lawsuit involves citizens of different states in order to confer diversity jurisdiction.

a. Real Party in Interest

To determine whether diversity jurisdiction exists, courts must look beyond the named parties and consider the citizenship of the real parties in interest. Navarro Savings Ass'n v. Lee,

---

[1] It is unclear as to whether in claiming that the Employees Plan is a real party to the controversy that Defendants are also claiming that the State of Mississippi is not a real party in interest. As such, the Court discusses whether the State qualifies as a real party or a mere nominal party.

446 U.S. 458, 460, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980); Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003). Accordingly, this Court "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Id. The State, as a quasi-sovereign, is the real party in interest when an action concerns a type of "injury" that the state either has addressed or would likely attempt to address through its laws to further the "well-being of its populace." Snapp & Son, Inc. v. P.R., 458 U.S. 592, 602, 605, 607, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982). Courts analyze real party in interest questions by examining the State's interest in a lawsuit as a whole. See Moore v. Abbott Laboratories, 900 F. Supp. 26, 28-29, 31 (S.D. Miss. 1995).

Here, the State of Mississippi, through the Attorney General, has addressed the injury at issue in this case under its Medicaid laws, consumer protection laws, and various state law tort actions. Under Mississippi common law, the Attorney General

> is a constitutional officer possessed of all the power and authority inherited from the common law as well as that specifically conferred upon him by statute. This includes the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the State, preservation of order and the protection of public rights.

Gandy v. Reserve Life Ins. Co., 279 So. 2d 648, 649 (Miss. 1973); State ex rel. Allain v. Miss. Pub. Serv. Comm'n, 418 So. 2d 779, 781 (Miss. 1982). Mississippi statutory law also supports this proposition. Consistent with the Mississippi Supreme Court's reference to the Attorney General being a constitutional officer and possessed with common law duties, Section 7-5-1 of the Mississippi Code provides in part as follows:

> The Attorney General provided for by Section 173 of the Mississippi Constitution shall be elected at the same time and in the same manner as the Governor is elected . . . . He shall be the chief legal officer and advisor for the State, both civil and criminal, and is charged with managing all litigation on behalf of the State. No arm or agency of the State government shall bring or defend a suit against another such arm or agency without prior written approval of the Attorney

General. He shall have the powers of the Attorney General at common law and is given the sole power to bring or defend a lawsuit on behalf of a State agency, the subject matter of which is of statewide interest . . . .

The Attorney General in this case is bringing suit on behalf of the State, and the State is the party with a substantial interest in the outcome. See Dunn Const. Co. v. Craig, 2 So. 2d 166, 174 (Miss. 1941) (discussing that when the subject matter of litigation is of statewide interest, the Attorney General is the one with the right to represent the State); see also Alfred L. Snapp and Son, Inc. v. Puerto Rico, 458 U.S. 592, 602, 607, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982) (Broadly stated, quasi-sovereign interests "consist of a set of interests that the State has in the well-being of its populace . . . . Although the articulation of such interests is a matter for case-by-case development-neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract-certain characteristics of such interests are so far evident"); Kelley v. Carr, 442 F. Supp. 346, 356-57 (W.D. Mich. 1977) ("some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries, protection of its citizens from fraudulent and deceptive practices, support for the general welfare of its residents and its economy, and prevention of its citizens' revenues from being wrongfully extracted from the state."). The fact that another party may benefit from a favorable resolution of this case does not minimize or negate the State's substantial interest. State of Alabama ex rel. Galanos v. Star Service & Petroleum Co., 616 F. Supp. 429, 431 (S.D. Ala. 1985) ("[w]hether other parties will benefit from this action does not affect the state's valid interest in enforcing this statutory scheme."). Thus, the State of Mississippi is a real party in interest in this suit as to all of the claims that the State asserts.

**b.** Complete Diversity

Since this Court has established that the State of Mississippi is a real party in interest, the Court must take the State into consideration for diversity purposes. Defendants contend that complete diversity exists because the Employees Plan is also a real party in interest.[2] Thus, under Defendants' view, the Court must take into consideration the following parties: (1) the State of Mississippi, (2) the Employees Plan, which is a Mississippi entity, and (3) the Defendants, who are not citizens of Mississippi.

In Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806), *overruled on other grounds by*, Louisville, Cincinnati & Charleston R.R. Co. v. Letson, 43 U.S. 497, 555-56, 2 How. 497, 11 L. Ed. 353 (1844) (regarding corporate citizenship), the Supreme Court construed the original Judiciary Act's diversity provision to require complete diversity of citizenship. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) ("We have adhered to that statutory interpretation ever since.") (citing Strawbridge, 7 U.S. (3 Cranch) at 267, 2 L. Ed. 435). As federal courts are courts of limited jurisdiction, they can act only where the Constitution and Congress endow them with some affirmative ground to do so. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375. 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). In particular, Congress has not empowered the federal courts to exercise diversity jurisdiction over the states. That is, it is beyond peradventure that "a State is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. Alameda Cnty., 411 U.S. 693, 717, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973). By the express terms of the statute, the diversity jurisdiction

---

[2] Defendants contend that Plaintiff conceded that the Employees Plan is a real party in Plaintiff's Motion to Remand. While Plaintiff actually did not concede such a point, since the result does not impact the Court's decision, the Court assumes, without deciding, that the Employees Plan is also a real party to this controversy.

does not ever extend to the states. See 28 U.S.C. § 1332. As such, the question before the Court is whether the State of Mississippi's lack of citizenship destroys complete diversity.

The Supreme Court has held that the grant of diversity jurisdiction does not extend to actions in which a state is a party in interest because "a state cannot in the nature of things, be a citizen of any state." Stone v. South Carolina, 117 U.S. 430, 433, 6 S. Ct. 799, 29 L. Ed. 962 (1886). Thus, "[o]rdinarily, '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.'" Louisiana v. Union Oil Co. of California, 458 F.3d 364, 366 (5th Cir. 2006) (quoting Texas Dep't of Housing and Cmty. Affairs v. Verex Assurance, Inc., 68 F.3d 922, 926 (5th Cir. 1995)). There is an exception when the state is merely a nominal party, but that is not this case here. Id. Consequently, even if Employees Plan is also a real party to this controversy, the Court nonetheless lacks subject matter jurisdiction over the lawsuit under Section 1332 because complete diversity is destroyed by the presence of the State of Mississippi.

Defendants rely heavily on the Fifth Circuit's decision in Hussain v. Boston Old Colony Ins., Co., 311 F.3d 623 (5th Cir. 2002) for the proposition that the presence of a state as a party may be disregarded for the purpose of determining complete diversity. This Court agrees with the court in Hood v. Hoffman-La Roche, Ltd., and is

> disinclined . . . to adopt the analysis in Hussain because it is dicta offered in a footnote addressing jurisdiction over an 'interpleader-like action' subject to 28 U.S.C. § 1441 (involving foreclosure actions against the United States) . . . and, more importantly, it conflicts with the more recent and well-reasoned decisions in In re Katrina Canal Litig. Breaches, 524 F.3d 700 (5th Cir. 2008), and Union Oil Co. of California, 458 F.3d 364 (5th Cir. 2006).

639 F. Supp. 2d 25, 34 n. 10 (D.D.C. 2009).[3]  Along the same lines, in Defendants' Notice of

Removal, they also rely on <u>C.H. Leavell & Co. v. Bd. of Comm'rs of Port of New Orleans</u>, 424

F.2d 764 (5th Cir. 1970) for the proposition that diversity jurisdiction may exist even if the State

is a Plaintiff.  Defendants conclude that the <u>Leavell</u> court held that "diversity jurisdiction existed

. . . against the Port of New Orleans (Dock Board) and the State of Louisiana because the Dock

Board had a separate legal identity from the State."  While Defendants are correct in noting that

diversity jurisdiction did exist in that case, such jurisdiction was present because the State of

Louisiana was *not* a party.  In <u>Leavell</u>, the plaintiff brought a diversity action against the Board

of Commissioners of the Port of New Orleans and the Department of Highways of Louisiana,

wherein it was asserted that the Dock Board was the alter ego of the State of Louisiana and

therefore federal jurisdiction was lacking. 424 F.2d at 765. The Fifth Circuit found that the Dock

Board was a "sufficiently separate entity from the State of Louisiana to sustain diversity

jurisdiction . . . ." <u>Id.</u> at 767.  Additionally, while the issue did not appear to be raised, the Fifth

Circuit also noted that the court had "twice recognized the separate entity of [the Department of

Highways of Louisiana]." <u>Id.</u> at n.7.  Thus, there was no entity that was a mere alter ego of the

State of Louisiana as to make the State a party to the action.  Here, in contrast, the State of

Mississippi, through the Attorney General, is the Plaintiff actually bringing the action against

Defendants.

---

[3]  The footnote in dicta in <u>Hussain</u> states, "As the government is not a citizen of any state, it is not considered in the complete diversity calculus." 311 F.3d at 635 n.46. The footnote cites to 4 Moore's Federal Practice § 22.08[1], n.9. Not only does this footnote conflict with more recent decisions of the Fifth Circuit, as noted above, but note nine in the cited section of Moore's Federal Practice merely notes that the "United States as a party does not provide minimal diversity." This does not support Defendants' contention that the Court should disregard the State of Mississippi as a party. Rather, the cited section of Moore's Federal Practice supports the decision that the State of Mississippi, like the United States government, cannot be sued in diversity, and thus cannot be removed to federal court based on diversity either. <u>See also</u> 4 Moore's Federal Practice § 22.08[1], n.10 (noting that the United States is not a citizen for complete diversity).

In <u>Union Oil Co. of California</u>, the State of Louisiana and the School Board of Vermilion Parish brought an action against oil companies in state court, alleging breach of contract, negligence, strict liability, and trespass arising out of oil and gas exploration activities. 458 F.3d at 365-66. The action was removed to federal court on basis of diversity jurisdiction, and the school board filed motions to remand, arguing that diversity jurisdiction did not exist because the State of Louisiana was a plaintiff. <u>Id.</u> The Fifth Circuit found that the State was a real party in interest, and, despite the fact that all defendants were diverse from the co-plaintiff school board, the State's presence in the action "defeat[ed] diversity jurisdiction." <u>Id.</u> at 367.

Similarly, in the Fifth Circuit decision of <u>In re Katrina Canal Litig. Breaches</u>, the Attorney General of Louisiana filed a class action in state court, naming the State and numerous Louisiana citizens as plaintiffs. 524 F.3d at 702. Defendants removed the case based on diversity under the Class Action Fairness Act (CAFA), and the plaintiffs moved to remand. <u>Id.</u> The Fifth Circuit noted that "a state is not a citizen under the diversity statutes, including CAFA;" however, because the State of Louisiana and its citizens were both real parties in interest, "minimal diversity" existed under CAFA. <u>Id.</u> at 706; <u>see also</u> 28 U.S.C. § 1332(d)(2)(a) (minimal diversity for class actions). Here, there is no class action; thus, minimal diversity does not suffice to allow the claim to remain in federal court.

The proposition that a state, as a quasi-sovereign, is not a "citizen" for diversity purposes is a long-standing one that enjoys acceptance in history, <u>see</u> <u>Postal Telegraph Cable Co. v. Alabama</u>, 155 U.S. 482, 487, 15 S. Ct. 192, 39 L. Ed. 231 (1894), and approval with the passage of time. <u>See, e.g.</u>, <u>Ohio v. Wyandotte Chemicals Corp.</u>, 401 U.S. 493, 498 n.3, 91 S. Ct. 1005, 28 L. Ed. 2d 256 (1971); <u>Northeast Fed. Credit Union v. Neves</u>, 837 F.2d 531 (1st Cir. 1988); <u>Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n</u>, 598 F.2d 1303, 1309 (3d Cir. 1979);

Wisconsin v. Maryland Nat'l Bank, 734 F.2d 1015, 1016 (4th Cir. 1984) (per curiam); Krisel v. Duran, 386 F.2d 179, 181 (2d Cir. 1967), *cert. denied*, 390 U.S. 1042, 88 S. Ct. 1635, 20 L. Ed. 2d 303 (1968); Union Oil Co. of California, 458 F.3d at 367. For this reason, the Court finds that the existence of the State of Mississippi as a real party in interest to this action destroys subject matter jurisdiction pursuant to Section 1332.[4]

***Federal Question***

In determining whether a case arises under federal law, the Court looks to whether the "plaintiff's well-pleaded complaint raises issues of federal law." City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 163, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987) (internal quotation marks omitted)). It is undisputed that Plaintiff has failed to assert a federal cause of action explicitly on the face of its well-pleaded complaint. However, Defendants assert that federal jurisdiction exists because the complaint, which asserts state-law claims, raises substantial and disputed issues of federal law. Much of the debate in the parties' briefs concerns a previous case involving similar facts, which was remanded to state court by this Court. See Hood v. Ortho-McNeil-Janssen Pharm., Inc., 2009 WL 561575 (N.D. Miss. Mar. 4, 2009) ("Janssen"). Significantly, the causes of action asserted in Plaintiff's Complaint are nearly identical to those

---

[4] Defendants also make the argument that "the plaintiffs [referring to the State and the Employees Plan] could have filed separate lawsuits against AstraZeneca for their damages, and the suit by the Employees Plan would be removable under § 1332." Assuming again that Employees Plan is even a plaintiff or a real party in interest to this controversy, the Court does not necessarily disagree with Defendants' statement. However, upholding jurisdiction based on this premise would collapse the very notion of complete diversity. Defendants are basically making a minimal diversity argument. For Section 1332 jurisdictional purposes, it is irrelevant that in the absence of the non-diverse party, the remaining diverse party's claim could be removed to federal court. Under Strawbridge, for diversity to exist, every plaintiff must be diverse from every defendant. 7 U.S. (3 Cranch) at 267. Of course there are "exceptions" to this, such as "improper joinder" or when a plaintiff is a mere nominal party, but those scenarios do not exist in the present case.

raised in <u>Janssen</u>. Even so, Defendants appear to argue that this case was removed on grounds different from the removal grounds raised in that case. Specifically, Defendants contend that jurisdiction exists because Plaintiff's Complaint raises federal questions regarding: (1) whether federal Medicaid law allows a state to recover funds expended for all Seroquel prescriptions; (2) whether the State's actions are potentially preempted under the federal Medicaid program; (3) whether Defendants violated the Federal Food, Drug, and Cosmetic Act ("FDCA") by allegedly "off-label" marketing Sesroquel for "non-FDA-approved uses;" and (4) whether regulation of Defendants' speech (i.e., its alleged improper promotion of Seroquel) implicates the First Amendment.

"[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." <u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. <u>Id.</u> at 314, 125 S. Ct. 2363. In other words, federal question jurisdiction exists where: (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. <u>Singh v. Duane Morris LLP.</u>, 538 F.3d 334, 338 (5th Cir. 2008). Further, "[t]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." <u>Howery v. Allstate Ins. Co.</u>, 243 F.3d 912, 919 (5th Cir. 2001).

a. Whether Plaintiff's Claims Raise Substantial Questions of Federal Medicaid Law

Defendants contend that this case raises substantial questions under federal Medicaid law. More specifically, Defendants aver that "whether the state can recover funds it spent for reimbursing Seroquel prescriptions here depends on interpretation of federal Medicaid statutes." Irrespective of the manner in which the Defendants attempted to craft their basis for removal, the Court finds that this issue is essentially the same as the arguments rejected in this Court's opinion in Janssen as well as in Judge Herlong's well-reasoned opinions in State of South Carolina ex rel. Henry McMaster v. Eli Lilly & Company, Inc., No. 7:07-cv-1875-HMH, 2007 WL 2261693 (D.S.C. Aug. 3, 2007) and State of South Carolina ex rel. Henry McMaster v. Janssen Pharmaceutica Inc., No. 7:07-cv-1452-HMH, 2007 WL 2022173 (D.S.C. July 10, 2007).

Medicaid is a federal-state partnership. See 42 U.S.C. §§ 1396-1396v (2005); Ark. Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 275, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006) (describing Medicaid program as a "cooperative one" between the federal government and the states). Under the Medicaid framework, each state develops a plan detailing standards for eligibility and the content of medical assistance it will provide, in accordance with federal statutes and regulations. See generally 42 U.S.C. § 1396a(a). The program is administered by the Center for Medicare and Medicaid Services ("CMS"), which is under the authority of the Secretary for Health and Human Services. See Montana v. Abbot Labs., 266 F. Supp. 2d 250, 252 (D. Mass. 2003). The Secretary "shall approve" any state plan which complies with the myriad requirements set forth in 42 U.S.C. § 1396a(a) and (b). The federal government then reimburses the state a statutorily defined percentage of the costs incurred by the state. 42 U.S.C. § 1396b.

Under Medicaid, states are not required to provide coverage for prescription drugs, 42 U.S.C. § 1396d(a)(12), but most states, including Mississippi, do. In order to save costs, Congress passed the Medicaid Rebate Statute, 42 U.S.C. § 1396r-8, which "requires drug companies to pay rebates to states on their Medicaid purchases." See Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 649, 123 S. Ct. 1855, 155 L. Ed. 2d 889 (2003); 42 U.S.C. § 1396r-8 (b)(1)(A). The Medicaid Act allows states to "exclude or otherwise restrict coverage of a covered outpatient drug if . . . the prescribed use is not for a medically accepted indication." 42 U.S .C. § 1396r-8(d)(1)(B).

For federal-question jurisdiction to arise here, there must exist "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable, 545 U.S. at 313, 125 S. Ct. 2363. The Supreme Court has emphasized that merely alleging a "federal issue" does not operate "as a password opening federal courts to any state action embracing a point of federal law." Id. Few cases can be "squeezed into the slim category Grable exemplifies." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 704, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006). In this case, the Complaint alleges various tortious acts committed by Defendants, including inducing the submission of false and fraudulent claims under the State's Medicaid program. The State further alleges that the Defendants made false statements of material fact and failed to adequately warn of the risks attendant to Seroquel.

Defendants proceed under the gestalt notion that, since Medicaid is largely a complex federal program, federal issues must somehow come into play. However, Plaintiff's claims in this case do not focus on the federal aspects of the Medicaid scheme. Rather, Defendants' liability will depend upon its breach of duties as defined and created by state law. For example,

if the State proves at trial that Defendants violated the Federal Medicaid Act, it would not necessarily follow that they committed Medicaid fraud as defined in Miss. Code Ann. § 43-13-213.  As this Court noted in <u>Janssen</u>,

> Here the central question is whether the Defendants' advertising and promotion methods violate [Mississippi] tort law . . . The alleged acts and omissions by the Defendants allegedly constitute failure to warn, negligence, breach of warranty, fraud and misrepresentation under [Mississippi] law . . . because [Defendants] allegedly intentionally misrepresented their drug's efficacy and risks for such uses.

<u>Janssen</u>, 2009 WL 561575, at *2.  Thus, in this case, the central dispute will be fact-bound and situation-specific *under Mississippi law*.  <u>Compare</u> <u>Grable</u>, 545 U.S. 308, 125 S. Ct. 2363 (federal arising under jurisdiction present where there was a pure issue of law, and one that could be settled once and for all and thereafter govern numerous tax sale cases) <u>with</u> <u>Empire</u>, 547 U.S. at 700-01, 126 S. Ct. 2121 (arising under jurisdiction not present where the issue of reimbursement of insurance benefits was "fact-bound and situation-specific.").  Additionally, Plaintiff's right to relief is dependent upon state law.  Therefore, Mississippi law is "essential" to the resolution of Plaintiff's claims.  <u>Cf.</u> <u>Grable</u>, 545 U.S. at 315, 125 S. Ct. 2363 (jurisdiction present where the question of proper notice by the IRS was an "essential element" and the "only . . . issue contested" in the plaintiff's state law quiet title action).

Even if Defendants could demonstrate the existence of a federal question in the instant case, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  <u>Grable</u>, 545 U.S. at 313-14, 125 S. Ct. 2363.  Defendants have failed to make this showing.  In general, "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires."  <u>Id</u>. at 318, 125 S. Ct. 2363 (internal quotation marks

omitted).  However, in contrast to the facts in <u>Grable</u>, a finding of federal jurisdiction over any state cause of action implicating provisions of the Federal Medicaid Act and its accompanying regulations could "attract [ ] a horde of original filings and removal cases raising other state claims with embedded federal issues." <u>Id.</u>, 125 S. Ct. 2363. Under these circumstances, the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be "consistent with congressional judgment about the sound division of labor between state and federal courts." <u>Id</u>. at 313, 125 S. Ct. 2363.

Further supporting this finding is the fact that the Federal Medicaid Act requires states to seek recovery of Medicaid funds from liable third parties. 42 U.S.C. § 1396a(a)(25); <u>see</u> <u>New York v. Lutheran Center for the Aging, Inc.</u>, 957 F. Supp. 393, 403 (E.D.N.Y. 1997) ("Where a federal statute such as Medicaid requires a state to enforce liability against a third party but does not provide the ground for that liability, federal question jurisdiction will not lie."). Therefore, a finding of federal jurisdiction in the instant case would not be "consistent with congressional judgment about the sound division of labor between state and federal courts." <u>Grable</u>, 545 U.S. at 313, 125 S. Ct. 2363.

The Court's decision to grant remand in this case, like our decision in <u>Janssen</u>, is consistent with many other courts who have remanded similar claims brought by states against pharmaceutical companies for recovery of Medicaid funds paid by the states. <u>See</u> Judge Herlong's analysis in <u>State of South Carolina ex rel. Henry McMaster v. Eli Lilly & Company, Inc.</u>, No. 7:07-cv-1875-HMH, 2007 WL 2261693 (D.S.C. Aug. 3, 2007) and <u>State of South Carolina ex rel. Henry McMaster v. Janssen Pharmaceutica Inc.</u>, No. 7:07-cv-1452-HMH, 2007 WL 2022173 (D.S.C. July 10, 2007). <u>See</u> <u>also</u> <u>Arkansas ex rel. McDaniel v. AstraZeneca</u>

Pharm., L.P., No. 4:08CV00601 BSM, 2008 WL 3992746, at *1 (E.D. Ark. Aug.25, 2008) (remanding similar Seroquel case to state court); South Carolina ex rel. McMaster v. Astra Zeneca Pharms., 2009 WL 1227848 (May 5, 2009 D.S.C. 2009) (remanding similar Seroquel case to state court); Arkansas ex rel. McDaniel v. Janssen Pharmaceutica, Inc., No. 4:07-cv-1210-WRW, 2008 WL 819019, at *1 (E.D. Ark. Mar.25, 2008) (remanding case based on claims similar to those asserted by Plaintiff); Pennsylvania v. Eli Lilly & Co., 511 F. Supp. 2d 576, 581 (E.D. Pa. 2007) (remanding similar case to state court and noting "[e]ven though 'medically accepted indication' is defined by federal law, liability under the state law claims presented here nonetheless does not depend on the violation of any federal standard or statute"); Hawaii v. Abbott Labs., Inc., 469 F. Supp. 2d 842, 852 (D. Haw. 2006) (remanding to state court claims for recovery of Medicare co-payments); State of Missouri ex rel. Nixon v. Mylan Labs., Inc., No. 4:06CV603 FLEA, 2006 WL 1459772 (E.D. Mo. May 23, 2006) (remanding case seeking damages for allegedly excessive reimbursement of Medicaid funds); Wisconsin v. Abbott Labs., 390 F. Supp. 2d 815 (W.D. Wisc. 2005) (remanding to state court suit by state based on state law claims for, inter alia, Medicaid fraud and false representation); State of Minnesota v. Pharmacia Corp., No. 05-1394, 2005 WL 2739297 (D. Minn. Oct. 24, 2005) (remanding case asserting claims for, inter alia, state Medicaid fraud and false advertising).

In contrast, the most comparable cases referenced by Defendants in support of jurisdiction are all opinions of a single district judge in the context of the Zyprexa Multidistrict Litigation. See e.g., Mississippi ex rel. Hood v. Eli Lilly and Co., 2007 WL 1601482 (E.D.N.Y. Jun. 5, 2007) (Weinstein, J.); West Virginia ex rel. McGraw v. Eli Lilly & Co., 476 F. Supp. 2d 230 (E.D.N.Y. 2007) (Weinstein, J.); Louisiana ex rel. Foti v. Eli Lilly & Co., 375 F. Supp. 2d

170 (E.D.N.Y. 2005) (Weinstein, J.). This Court is more persuaded by the majority of courts that have found federal jurisdiction lacking under these circumstances.

　　b.　Preemption Issues

　　Defendants' make the argument that "when a state takes legal action pursuant to its own state law, but its action exceeds its authority under federal Medicaid law, there is a paramount federal interest." The fact that Defendants' allege that Plaintiff's state law claims could possibly exceed the State's authority under federal law is also insufficient to confer federal removal jurisdiction here. Defendants' preemption-type argument arises as a defense to Plaintiff's allegations. Removal is not proper if based on a defense or an anticipated defense which is federal in nature, "including the defense of preemption . . . ." Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) ("The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under [a federal statute] does not establish that they are removable to federal court"); see also Gully v. First Nat'l Bank, 299 U.S. 109, 116, 57 S. Ct. 96, 81 L. Ed. 70 (1936) ("By unimpeachable authority, a suit brought upon a state statute does not arise under an Act of Congress or the Constitution of the United States because *prohibited* thereby") (emphasis added). In the Gully decision, Justice Cardozo observed:

> [A] finding upon the evidence that [State] law has been obeyed may compose the controversy altogether, leaving no room for a contention that federal law has been infringed. The most one can say is that a question of federal law is lurking in the background, just as farther in background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.

299 U.S. at 117, 57 S. Ct. 96 .

　　By virtue of the Supremacy Clause, it is a "fundamental principle of the Constitution . . . that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530

U.S. 363, 372, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000). The preemption doctrine requires an examination of congressional intent. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982).  State action may be preempted by federal law in three ways: "by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541, 121 S. Ct. 2404, 150 L. Ed. 2d (2001) (citations omitted); accord English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990) (listing three categories of preemption); AT&T Corp. v. Public Util. Comm'n of Tex., 373 F.3d 641, 645 (5th Cir. 2004) (same). As the Supreme Court has hastened to point out, however, "the categories of preemption are not 'rigidly distinct.'" Crosby, 530 U.S. at 372 n. 6, 120 S. Ct. 2288 (quoting English, 496 U.S. at 79 n.5, 110 S. Ct. 2270). Implied conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 204, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983) (internal quotation marks omitted) (quoting Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)); see also Wells Fargo Bank of Tex. NA v. James, 321 F.3d 488, 491 n. 3 (5th Cir. 2003) (explaining that implied conflict preemption occurs "where the state law mandates or places irresistible pressure on the subject of the regulation to violate federal law, where compliance with both regulations is physically impossible, where the state regulation frustrates or hectors the overall purpose of the federal

scheme, or where the federal scheme expressly authorizes an activity which the state scheme disallows.") (citations omitted).

As noted, usually federal preemption only provides a defense, and therefore does not permit removal. Caterpillar, 482 U.S. at 393, 107 S. Ct. 2425. However, one corollary to the doctrine of the well-pleaded complaint is the doctrine of "complete preemption." Id. Complete preemption arises when congress intends a federal statute to preempt a field of law so completely that state law claims are considered converted into a federal cause of action. See Metropolitan Life Insurance Company v. Taylor, 481 U.S. 58, 63-65, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987); and Caterpillar, 482 U.S. at 393, 107 S. Ct. 2425 ("On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."). While preemption of state law by federal law may be accomplished in various ways, the "complete" preemption of state law is not as common. See Anderson v. Elec. Data Sys. Corp., 11 F.3d 1311, 1315 (5th Cir. 1994) ("Congress may so completely preempt a particular area that any civil complaint raising this *select group* of claims is necessarily federal in character . . . .") (emphasis added).

Unlike the "substantive" preemption doctrines discussed above, "complete preemption" is a facially procedural doctrine. Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000) (noting that "[c]omplete preemption, which creates federal removal jurisdiction, differs from more common ordinary preemption, which does not); Lister v. Stark, 890 F.2d 941, 943 n.1 (7th Cir. 1989) ("The use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine."). While a court conducts a substantive, ordinary preemption analysis to determine whether to

apply federal law instead of state law, a complete preemption analysis is conducted to determine

whether a federal court has jurisdiction to hear claims removed from state court. See 28 U.S.C. §

1441.

> To establish complete preemption, a defendant must demonstrate that:
>
> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of that right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

Gutierrez v. Flores, 543 F.3d 248, 252 (5th Cir. 2008). The Fifth Circuit's "former complete

preemption test has been altered by the Supreme Court insofar as the Court 'shifted the focus of

the last part of [the Fifth Circuit's] test from Congress's intent that the claim be removable, to

Congress's intent that the federal action be exclusive.'" Bellfort Enters. Inc. v. PetroTex Fuels

Inc., 399 F. App'x 416, 419 (5th Cir. 2009) (quoting Beneficial Nat'l Bank v. Anderson, 539

U.S. 1, 11, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)).

To show complete preemption here in order to justify removal, Defendants must

demonstrate that Congress has so occupied this area of law (i.e., Medicaid) that Plaintiff cannot

present a state-law claim, and that the only existing interpretation of Plaintiff's claim is one

under federal law. See Beneficial Nat'l Bank, 539 U.S. at 8, 123 S. Ct. 2058. That is, Defendants

must show that Congress has, either explicitly or by inference, directed that federal law provide

the exclusive cause of action in this field. Id. Defendants cannot make such a showing. In fact,

Defendants failed to point to any sections, or even a single section, of federal Medicaid law that

would demonstrate complete preemption.[5] Further, Medicaid is the hallmark of "cooperative

Federalism." Harris v. McRae, 448 U.S. 297, 308, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980). It is

---

[5] Defendants also failed to cite to a single case that would support the argument of complete preemption here.

administered jointly by state and federal governments. That is, the "Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." Id. Hence, the very nature of the Medicaid program nullifies any claim that it completely preempts Mississippi law in order to warrant federal removal jurisdiction.

It is unclear whether Defendants' preemption argument also extends to its arguments regarding the FDCA or the FDA. To any extent Defendants make such an argument, the Court notes that the Supreme Court recently found that state products liability law was not preempted by FDA regulations, noting that "[i]f Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history." Wyeth v. Levine, --- U.S. ----, ----, 129 S. Ct. 1187, 1200, 173 L. Ed. 2d 51 (2009). Thus, such an argument, if made, does not justify federal question jurisdiction.

### c. Defendants' "Off – Label" and FDCA Arguments

Despite Defendants contentions that their bases for removal have not previously been considered, this Court has already rejected the exact type of off-label arguments alleged in this case. Specifically, this Court, again adopting Judge Herlong's reasoning, noted: "Thus, while the prescription of the drugs for such 'off-label' uses was the alleged goal-and the alleged harm-the submission of claims for non-medically accepted indications or non-medically necessary uses was not in and of itself the tortious conduct." Janssen, 2009 WL 561575, at *2. However, even if this Court had never addressed the off-label argument, the Complaint, as pled by Plaintiff, has very little to do with violations of federal law regarding the FDCA and "off-labeling." Defendants claim that the "entire premise" of Plaintiff's injury revolves around representations about Seroquel's "off-label uses." Yet, Plaintiff's thirty-eight page complaint only mentions an "off-labeling" discussion twice, and never once as a cause of action. Likewise, the references are

in the context of the State allegedly paying additional and inflated prices for Seroquel. Plaintiff's actual "entire premise" for the injury revolves around AstraZeneca's alleged failure to communicate the safety and efficacy of Seroquel, which is why the State allegedly expended more money than necessary. Further, the State explicitly notes that it is not seeking to hold Defendants liable under the FDCA.

Plaintiff's Complaint alleges a pattern of fraudulent conduct rather than an independent violation of federal law. A foundational principle of federal law is that a plaintiff is the master of the complaint. See Healy v. Sea Gulf Specialty Co., 237 U.S. 479, 480, 35 S. Ct. 658, 659, 59 L. Ed. 1056 (1915); The Fair v. Kohler Dye and Specialty Co., 228 U.S. 22, 23, 33 S. Ct. 410, 411, 57 L. Ed. 716 (1913). Likewise, it is well settled that "a plaintiff with a choice between federal and state law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded." Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995) (citing Merrill Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 809, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986)).

Additionally, applying the Grable test discussed above, the Court finds that any references to "off-label" uses in this case are not "substantial enough" to justify the exercise of federal question jurisdiction.[6] See Grable, 545 U.S. at 314 (noting federal issue must be "actually

---

[6] Generally, "for pharmaceutical products liability cases filed in state court and raising FDCA-related state law claims, federal 'arising under' jurisdiction does not exist pursuant to Merrell Dow." Allen v. GlaxoSmithKline PLC, 2008 WL 2247067, at *9 (E.D. Pa. May 30, 2008); see also Greene v. Novartis Pharms. Corp., 2007 WL 3407429 (M.D. Ga. 2007) (remanding case where plaintiff alleged that defendant pharmaceutical manufacturer fraudulently misrepresented drug's safety and failed to warn of drug's dangers); Caggiano v. Pfizer, Inc., 384 F. Supp. 2d 689 (S.D.N.Y. 2005) (remanding case where plaintiff alleged "classic state-law claims [but] also peppered with allegations that the defendants violated various federal statutes and regulations . . . for example . . . that defendants deliberately failed to seek required FDA approval for many uses . . . .").

disputed and substantial").  Plaintiff's prima facie case of state Medicaid fraud requires proof

that Defendants made a false representation of a material fact or concealed or failed to disclose a

material fact which affects the Defendants' right to payment or reimbursement under the State's

Medicaid plan. MISS. CODE. ANN. § 43-13-205.  As alleged, Plaintiff can establish a prima facie

case of Medicaid fraud under state law without having to establish that Defendants'

communications were "off-label" in violation of federal law.[7]  In sum, the Court finds that (1)

Defendants' "off-label" arguments for federal jurisdiction have already been rejected by this

Court as well as by Judge Herlong in State of South Carolina ex rel. Henry McMaster v. Eli Lilly

& Company, Inc., 2007 WL 2261693 (D.S.C. Aug.3, 2007) and State of South Carolina ex rel.

Henry McMaster v. Janssen Pharmaceutica Inc., 2007 WL 2022173 (D.S.C. July 10, 2007); (2)

violations of the FDA and the FDCA, through alleged off-labeling, fail to appear on the face of

Plaintiff's well-pleaded complaint; and (3) such arguments fail to present a substantial federal

issue sufficient to justify the exercise of subject matter jurisdiction under Grable.

> d.  First Amendment Implications

Defendants also argue that the regulation of a drug manufacture's speech implicates the

First Amendment.   As noted above, a fundamental premise underlying "arising under"

jurisdiction is embodied in the "well-pleaded complaint" rule. That doctrine provides that:

> [w]hether a case is one arising under the Constitution or a law or treaty of the
> United States, in the sense of the jurisdictional statute . . . must be determined
> from what necessarily appears in the plaintiff's statement of his own claim in the
> bill or declaration, unaided by anything alleged in anticipation or avoidance of
> defenses which it is thought the defendant may interpose.

Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S. Ct. 724, 58 L. Ed. 1218 (1914); see also Gully v.

First National Bank in Meridian, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70 (1936); Louisville &

---

[7] "Off-label" uses are uses other than those for which a drug was approved by the FDA.
Washington Legal Found. v. Henney, 202 F.3d 331, 332 (D.C. Cir. 2000).

<u>Nashville R.R. Co. v. Mottley</u>, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908). Therefore, a defendant "may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." <u>Franchise Tax Board v. Construction Laborer's Vacation Trust</u>, 463 U.S. 1, 11, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) (emphasis in original). A necessary result of the well-pleaded complaint rule is that a defendant may not remove a case on the basis of a federal statutory or constitutional *defense*, even if the defense is anticipated in the complaint and both parties admit that the only question for decision is raised by the federal defense. <u>Id.</u> at 10-13, 103 S. Ct. at 2841. Here, even assuming that there could possibly be a First Amendment issue, it would be asserted by Defendants. Stated differently, Plaintiff's Complaint alleges false statements of material fact regarding the safety and efficacy of Seroquel. If the First Amendment comes into play, it will be raised as a defense to Plaintiff's allegations. Thus, Defendants' attempts to confer federal jurisdiction through the First Amendment fail.

### III. CONCLUSION

To summarize, Defendants have failed to meet their burden of showing that subject matter jurisdiction is proper. Thus, based on the reasons stated above, the Court grants Plaintiff's Motion to Remand.

So ordered on this, the _7th__ day of October, 2010.

**/s/ Sharion Aycock**_____
**UNITED STATES DISTRICT JUDGE**